Shorter advocates for this hearing. Good morning, your honors. May it please the court. I'm Chuck Lloyd and I'm here on behalf of Todd and Michelle Borchardt and their daughter, Daniel Shaver. We come to the court asking that your honors reverse the judgment of the district court against the Borchards and in favor of State Farm on the ground that State Farm woefully failed to prove one of the elements that was necessary for the insurer to obtain a judgment in this case. Specifically, they presented no evidence at all, either by document or by testimony, that the misrepresentations that the jury found that were made were material to this particular claim. And this is an unusual set of facts. And what what's the case that would make that a failure of proof, a fatal failure of proof? Your honor, there's several. It's the Johnson case from Minnesota that says, from the Minnesota Supreme Court, that says that you don't presume materiality, that basically a misrepresentation of an immaterial fact will not avoid the policy. That doesn't support your argument. But the argument there, of course, is immaterial fact. And, you know, a statement of loss in an insurance claim is inherently material, right? I mean, and if you have items that you've made a statement of loss claim for that do not exist, insignificant items totaling thousands of dollars, isn't that material per se? And if not, why not? Well, it's not because of the unique set of facts in this case, your honor. And that is that when I would call the court's attention to plaintiff's exhibit P7, which is the actual statement of the proof of loss, not the itemization. That's P6. That's the attachment to it. P7 has a dollar amount on it of about two hundred and two thousand, I think, is what the amount was. And there was testimony from the public adjuster who assisted the Borkerts in this case that, yes, there were issues with the itemization. And some of the issues with the itemization are the things that your honor is now pointing to about the misrepresentations. There were other issues with respect to this particular itemization, several thousand dollars of furniture items, big ticket items that were not valued on this claim. So is this your assertion that there's some kind of bottom line rule? Well, in this particular case, your honor, because of the nature of this fire where there was a it was a a total destruction of the structure, the fire is the fire experts described it flashed over and basically eliminated both evidence of the cause of the fire and most of the contents. There was no ability to go through and do what you know, one, two, three visible count. It was all done by memory. And so the public adjuster said, who's got 50 years of experience, who has done thousands of these cases, has said, when you have that kind of loss, what happens is the adjuster's job is to come up with a fair bottom line. Well, why isn't that just part of the materiality assessment? In other words, so you have the list of items, as Judge Erickson's described, some are overstated, some are listed that never existed, but also there are some items that they just failed to put on the on the loss list. Why isn't that for the jury just to decide whether overall that's material? Well, Your Honor, at that point, that comes the jury. If there had been evidence that in that circumstance that would materially affect the claim or how the insurance company deals with the claim, then that would have been a jury issue. But that's not what happened. And this court has said the insurer has to present evidence of materiality in the Warren case, that the failure to do that justifies a judgment as a matter of law. And in this instance, and if you go to Willis, that says, even if you don't rely on the misrepresentation for the ultimate claim outcome, and the evidence here is undisputed that they didn't rely on the proof of loss misrepresentations and denying the claim. It's still a material fact if it is reasonably relevant at the time of the investigation, as part of the investigation. And there's no evidence at all. I don't think the jury needed an expert here. Well, I mean, this reminds me of Ray's HPSA for many years ago. Well, this was this was so many misrepresentations of such total value and apparent intentionality, if you will, that the jury, I think, why isn't that sufficient for the jury to to make a finding of material of materiality? Well, Your Honor, with all due respect, I would disagree that it was a lot of misrepresentations. It's about twenty five items. We can quibble about the numbers. But the principle, why isn't the principle I'm stating sound? If if if if the jury can can make if a rational jury can infer materiality from the from the sum of the sum of the parts, so to speak. Why why do we why do we why does the insurer have to bring in its half its underlying under underwriting and claims force to say, oh, that would have been that was material? Well, Your Honor, they have to present evidence because they have the burden to establish that evidence is there from your from your own adjuster, in part. Why? I disagree with that characterization as well. Your Honor, the adjuster said in this instance and this goes back to Willis saying it has to be relevant to the jury can find credible one percent, 10 percent, 50 percent or 100 percent of what he testified to. And we have to view the evidence in the light most favorable to the verdict that that is correct, Your Honor. And there is no evidence at all in support of materiality in here. What if what if they what if the one of the items had been a super big ticket item, 100000 dollars that they claimed that never existed? Would you need an expert for what would State Farm need an expert to come in and tell a jury? Hundred thousand dollars for a fifty thousand dollar limit is material. No, Your Honor, if if you hundred thousand dollar limit, if we are talking about inflating the claim, then you have the issue with respect to whether then in that setting you would be able to then infer the materiality. But here there was no inflation of the claim. But but that's pulling in your bottom line theory again. Right. So that you're saying it's not an inflation of the claim so long as we left out some other things that we just didn't we didn't make a claim for, which the insurance company may say, well, we don't know what those things were. Maybe that's not what we're claiming here, Your Honor. These things that we are identifying were listed on P6. I guess my question is, is there a point at which the insurance company would not need to have an expert to show materiality that it would be, as Judge Loken stated? Perhaps there it is. There's enough there for the jury to decide without an expert. And is there a line at which you have to say now under the circumstances as you're describing, this is an unusual case? What's the standard? Well, Your Honor, I'm I'm not sure I would say that they needed an expert witness. They needed a witness, somebody to come in and say, we investigated this claim and it was impacting our investigation. Well, but what case says that materiality has to be from the perspective that the jury has to have evidence that that specific to the insurer that it was material as opposed to why isn't materiality simply a question for the jury, the materiality obviously being to to the claim. But why does there have to be process evidence? Well, Your Honor, there has to be evidence of some sort. And the evidence in this case does not lend itself to drawing that inference at all. OK, but now now you're just now you're just arguing that the verdict was against the weight of the evidence. Maybe it was. That's well, but that's not the legal issue you're presenting to us. Well, the legal issue is that they presented no evidence and did not sustain their burden of proof. If there was presenting evidence and all you're doing is is is attacking the the reasonableness of the verdict, if there was evidence. Yeah. Your Honor, I don't care if it came in the in your case or in their case or just in the totality of the of the facts in the in the record at the time the case was submitted to the jury. If there's evidence there from which a reasonable jury could find materiality, then then it seems to me all you're doing is is is attacking the reasonableness of the verdict. If there were evidence, but Your Honor, that's the point. There was no evidence from what the court thought there was. Well, you hear that the district court's decision, Your Honor, with all due respect, is not entitled to any deference at this point. You're reviewing this de novo. Exactly. But but isn't it true that, you know, the insurance company presents evidence that they denied this claim. They denied the claim for two reasons. One, they said the fire was intentionally set. And the second was that there were material there were material misrepresentations. Right. Correct. So, you know, what magic is in there and putting someone on the stand to say, just like our theory is, we denied the claim on material misrepresentation. Because, Your Honor, they identified what the misrepresentations were that they denied the claim on. None of them had anything to do with the contents portion of the claim. It all had to do with the arson portion of the claim for which they basically abandoned that part of the misrepresentation at trial by not calling the neighbor who was going to come in and testify and say, I saw these guys after the time they claimed they left. They even elicited from Mike Pakala, who testified that what happens normally is when you put forward a contents claim like this, the insurance company then puts together their spreadsheet and they come to you and say, we disagree with your values. We disagree with your depreciation. And we there appear to be items that shouldn't be on this list. And there is then the discussion that goes back and forth. And he testified that didn't happen. On cross-examination, strangely enough, State Farm elicited from him the answer. The reason that was not done was because they were investigating the arson claim. They weren't spending any time at all on the contents claim. And the likely reason for that is the reason that I am arguing this, although we'll never know because they didn't call a witness. But the reason is they knew that there were large items that were not included on the list. And even if they could identify certain things, that the bottom line, that number that is on P7, the amount that State Farm was being asked to pay, wasn't going to materially change. And that's what Mike Pakala testified to. When I asked him, when you take into consideration all of these things that what State Farm did, does that change the bottom line? Does that change that number? And he said, I could step on it a little bit, maybe one way or the other, but it wasn't going to change very much. And I said, so is there going to be a material change to that number? And he answered, no, no. And that's the point. The document P7 establishes the amount that the Borkerts were requesting that State Farm pay. And these misrepresentations did not affect that number at all. And for that reason, State Farm did not satisfy its burden of proof to void this coverage in this instance. I'd like to, with the court's permission, I'd like to reserve the remaining two minutes. Thank you. Ms. McBride. Good morning, Your Honors. Kate McBride here for State Farm Fire and Casualty. Materiality is a legal standard. It's defined as facts relevant to the insurer's rights to decide its obligations and protect against fraud. Consistent with that, the district court said, this court in Willis, said it can be a material misrepresentation if it explicitly relates to an item included on the loss, leads to an increase, or goes to the amount of the claim. Here, the instruction says that, if I understand the instruction given on materiality, to be material it must be sufficiently substantial to matter to a reasonable insurer. That sort of hints at the idea that the jury needs to know what a reasonable insurer might think. Well, under the law, and it goes on to say, unless it's so small. So the jury was told, you are to decide whether this is material. There's nothing in the law that requires someone to come in and say, well, this is reasonable, and for good reason. And here's why. If State Farm were to present someone and say, you know what, anything more than anything off by a penny or five cents, that's material. But that's not Minnesota law, right? A penny, I think the case law is pretty clear that a penny is not going to do it. So that wouldn't be a reasonable insurer. Exactly. And so why requiring someone to come in and give that testimony? State Farm, in other words, what I'm saying is State Farm, any witness cannot come in and say what materiality is. It's the court's job to instruct the jury as to the law and to apply, the jury then applies the law to the facts. If I could push you a little bit on that, wouldn't there be something helpful to have the jury understand what is material to an insurer? So we talk generally about what is material to a person. But what's material in the world of insurance versus what's material when you are choosing between two items in a grocery store, maybe two different things. And it seems to me that the instruction includes the penny, the five cents, the five dollars, because it's so small that no one's likely to care about it. I'm just curious of how the jury is going to separate out materiality in the world of insurance from anyplace else. Sure. But that's because it's so simple and they were told without objection, again, from the plaintiff. Plaintiff agreed to this. We objected to the term reasonable in there. The court put it in there. But the jury was told that a concealment or misrepresentation of an item is material unless it's so small to be trivial. And really that makes sense because under the law, a misrepresentation of an item of personal property is material because the personal property is the very object of the insurance policy that covers it. It's a misrepresentation that is material because it causes the insurer to do something other than what it would do. In other words, pay for an item that does not exist. We're not talking about, oh, you overvalued this or not. These are, we're talking about items that they made up out of whole cloth. It goes directly to the amount of the claim and it affects the insurer's rights to decide its obligations and protect against fraud. Experts can't testify about a legal matter. They can't say what is a legal standard. The court can and the court did. And the jury here found, based on the evidence in front of it, as the district court found that the Borkshires attempted to steal from State Farm. They learned that that amount was not trivial. That it was a concealment of an item of personal property that was not trivial. And that's the instruction. It was by thousands of dollars. Mr. Pakula testified that many insurers take the position about the, if it's a lie, about the existence of an item, you don't get paid. And he said that's fair. So to the extent that there was a need for reasonableness testimony, which I don't believe there is, Mr. Pakula testified to that. We heard counsel say that Mr. Pakula said, oh, you know what, they never came to me and worked through this spreadsheet. Well, what the full testimony from Mr. Pakula was, is he knew they were investigating this fire because of suspected arson. And he said it is not uncommon to not discuss pricing under that circumstances in the usual course of things. And insurer is not going to come and talk to me about things that they might be concerned about that shouldn't be on this list if they're investigating arson. I want to go to your bottom line theory, because I call it the no harm, no foul. Here we have this argument. Okay, we lied. We made things up. We put things on there. But you know what? We also forgot some things. And we depreciated. So no harm, no foul. But courts have rejected that. And that's why, because the reason is because Minnesota, any attempts to defraud an insurer voids the policy. And that is for good reason. That is something we want to encourage under the law, because it discourages fraud. Dishonesty cannot be ignored. And it cannot be rewarded. And I refer you to, I realize it's not precedent for this court, but I thought that the Iowa Supreme Court in Webb sets out that understanding, that thought process quite well. There is no case from this district that allows an insurer to make up items and put them on the proof of loss and recover under the policy. Warren is an opposite. The concealment was about the cause of the fire. And the insurer therefore had to establish that the alleged misrepresentations were relevant to its investigation into the cause of the fire. This court found that the first two alleged misrepresentations, there was no evidence of intention to mislead. And the last two just simply failed to show they had any relevance to the investigation at all. But what was not quoted by counsel from that case is, in order to be material, a misrepresentation must somehow impact the insurer's investigation of the claim. Lying about the existence of thousands of dollars ipso facto impacts states farm's investigation into what it owes under the personal property items. And so, well, what case is that? What case are you citing? That was Warren. Their claim is that Warren says that we needed an expert. It does not. It's claimed we needed evidence about misstating things on a personal property proof of loss. And so are you saying that Warren also stands for the proposition that regardless of any bottom line, regardless of any maximum amount of coverage, that any substantial misrepresentation of the existence of an item, even if it's $100,000, we submitted a claim for $200,000. We put on there a television that's worth $2,000 that we didn't really exist. It didn't exist. Now it's down to $198,000. Are you saying that Warren stands for the proposition that that's material? I wouldn't go that far because I don't think Warren goes into that in that kind of detail. What what what I'm saying is that Warren is not is in opposite opposite here because it doesn't really deal with the issue of lying on on a proof of loss about personal property. But didn't you didn't you argue? I'm sorry. Just to follow up. Thank you. That that my example of the $200,000 down to $198,000 when there's $100,000 max. Are you is it your position that that is are you arguing for a per se materiality because of the amount of dollars regardless of the maximum amount of coverage? Exactly. I think in what what case do you have? Is that your theory or is that does that have a basis in? I think you could find support for that under the Willis case because there this court said that misrepresentation is material. If one of three things it explicitly relates to the claim, it leads to an increase or and that's important or it goes to the amount of the claim. I think we have all three here. What I suggest is one example that I brought up and there are other cases in my brief along where I cited the web case was that courts and in effect, the district court said, quote, case law universally treats misrepresentations about an existence of an existence of an item is material. I think courts from around the country say we're not going to buy into this. No harm, no foul, because we don't want to reward or encourage fraud. What we're saying is you lie. I'm sorry. Go ahead. I if you lie about something and and and again, it's for the jury. It's a fact issue for the jury to determine. Given applying the law that the court gives to the facts here and here, the jury had plenty ample facts to to find that they misled them about thousands of dollars of items. Now, counsel in the reply brief picks on four. First, there was evidence. Michelle said, yeah, I I didn't admit to you confronted me that we didn't have 50 boxes of cigars at twenty dollars each. And I didn't tell you about that. That's not correct. The curling iron issue. Speaking of one who if you go five days without a shower and power and you don't bring one. I mean, it was it was evidence that went to her credibility and value, certainly warranted information to to present to the jury. The cash, even though she didn't claim it, it goes to her credibility and intent here. And so I will I do want to say to the court and I apologize that I I misunderstood. I misread about how many cameras they had. So, oh, I'm sorry. It's OK. I keep coming back to the same idea. You know, your argument initially was that any attempt to defraud voids the policy. It's a very harsh result, very broad. And I'm just trying to figure out where is there a case that actually says that? I mean, because at the end of the day, you know, you say, well, it's different if, for example, you've just you've overvalued a item. I got a ring that that is maybe appraisable at twenty thousand. I make a claim it's worth forty thousand. Right. And you say that's different. Well, I'm going to wait a minute. If if your argument is any attempt to defraud voids the policy, then I want to know what case actually says that. And and are there no exceptions? Because it seems awfully harsh. Well, I think several parts to to the answer to that question. There is no case that says at five dollars and under, you're good. Five dollars and over, you're not. And the reason for that is, is is that it is up to the jury. And the jury was instructed here unless the amount is so small that that that it's trivial. And and that's what Willis and I think Willis and Tweedle stand for that proposition, that it is a jury's job to take this definition of does this impact the insurer's rights to decide its obligations and protect against false claims? Is it an object of the insurance policy that that covers it? Lying about personal property is ipso facto fraud. If you say we're not talking here about I thought it was ten ninety nine and it was actually, you know, worth ten fifty four. We're talking about making things up, saying that you we had this many these many TVs. We had these many lawnmowers. I had this ring. I didn't have it. It was valued at 50. No, it's really two thousand dollars. We were talking about significant misrepresentations about the existence of items, not whether, you know, all right, I'm playing the price is right, wrong. And I didn't guess what that washing machine cost. We're talking about making things up here. What would a jury have been? I would have. Could a reasonable jury determine that this was not material? I mean, if it's truly up to the jury and you're saying there's sort of it's not five dollars. It's I think I think we would have a very difficult time coming in and saying, but I think an argument because it's it's very hard to undo a jury verdict as we should. And it's a fact issue. I think an argument, a good faith argument can be made that the jury's verdict is not there's insufficient evidence to support it. With regard to whether they knew about this, the denial letter complies 100 percent with the law. Personal property section is mentioned in it. This concealment section is mentioned. They knew it from their egos and depositions time after time. Tell me what's look at this. Come back to me. I'm giving it to you. Come back and tell me if anything on here shouldn't be. They knew that State Farm was investigating this. They knew they put that list in their own handwriting. This isn't typos. This is not mistakes. They made these things up on a whole cloth with the attempt to defraud the insurance company. That's what the jury found. And this court should affirm the judgment because there is law to support. This is a material misrepresentation. Thank you, Your Honor. Thank you, Mr. Lloyd. We'll see what I can squeeze in in two minutes. First off, Judge Erickson, in answer to your question, State Farm can't cite to you a law that says any attempt to defraud the insurance company will void the policy because the Minnesota Supreme Court specifically rejects that position in the Johnson case. It says that there are states out there that says any intentional misrepresentation will void the policy. But that's not the law in Minnesota. It has to be an intentional misrepresentation of a material fact. That's point A. Point B, the question about what a reasonable insurer would do. State Farm argued successfully, I might add, when we attempted to amend our complaint to add a bad faith claim, that he laid jury because we didn't have any expert testimony about what a reasonable insurance company would do. This is the judicial estoppel raised first in your reply brief. It's not preserved on appeal. Well, Your Honor, I'm saying that their argument with respect to we didn't have to have that, that's a shift in position for them. They argued specifically that they did. The court explicitly rejected the argument of judicial estoppel. You did not raise it as an issue on appeal or refer to it in your main brief. Well, now, if you're trying to twist it out of judicial estoppel into some sort of different way to look at the evidence, then that, okay. You're telling me I'd be unsuccessful? Well, I mean, I've already, you know, from my standpoint, if the verdict was just unreasonable, not based on an error of law, deference, it's a, you're climbing a much steeper hill. Well, I appreciate that, Your Honor. And our point remains the same. They, this case never should have gone to the jury because State Farm didn't present any evidence. This whole issue, I'm out of time. So we'd urge reversal of the district court. Thank you, Your Honors. Thank you, counsel. The case has been thoroughly and effectively briefed and argued, and we'll take it under advisement. And the court will be in recess for an entire 15 minutes.